UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BRYAN CARRIER,<br><br>                Plaintiff,<br><br>  vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,<br><br>                Defendant. | CIV. 15-5086-JLV<br><br>ORDER |

**INTRODUCTION**

On November 25, 2015, plaintiff Bryan Carrier filed a complaint appealing the final decision of Nancy A. Berryhill,[1] the acting Commissioner of the Social Security Administration, finding him not disabled.  (Docket 1). Defendant denies plaintiff is entitled to benefits.  (Docket 8).  The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").  (Docket 10).  For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 18) is granted.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017.  Pursuant to Fed. R. Civ. P. 25(d), Ms. Berryhill is automatically substituted for Carolyn W. Colvin as the defendant in all pending social security cases.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 15) is incorporated by reference. Further recitation of salient facts is incorporated in the discussion section of this order.

On July 22, 2013, Mr. Carrier filed an application for Social Security disability benefits alleging an onset of disability date of February 1, 2012. (Docket 15 ¶ 1). On October 13, 2015, the administrative law judge ("ALJ") issued a decision finding Mr. Carrier was not disabled. Id. ¶ 3; see also Administrative Record at pp. 78-94 (hereinafter "AR at p. ___"). On November 12, 2015, the Appeals Council denied Mr. Carrier's request for review and affirmed the ALJ's decision. (Docket 15 ¶ 3; AR at pp. 1-4). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which Mr. Carrier timely appeals.

The issue before the court is whether the ALJ's decision of October 13, 2015, that Mr. Carrier was not "under a disability, as defined in the Social Security Act, since February 1, 2012, through [October 13, 2015]" is supported by the substantial evidence in the record as a whole. (AR at p. 94) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v.

Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was committed.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."  Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "  Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).  Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.  See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI.  20 CFR § 416.920(a).  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits).  The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.  (AR at pp. 78-94).

**DISCUSSION**

**STEP ONE**

At step one, the ALJ determined plaintiff had not been engaged in substantial gainful activity since February 1, 2012, the alleged onset date of disability.[2]   (AR at p. 80).

**STEP TWO**

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)."   20 CFR § 404.1520(a)(4)(ii).   "It is the claimant's burden to establish that his impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).   A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities.   20 CFR § 404.1521.   An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   Kirby, 500 F.3d at 707.   "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."   Id. (citation omitted).   "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ."   Id. at 708 (internal citation omitted).   Additionally, the

---

[2]The ALJ found plaintiff performed work in 2012, 2013 and 2014.   (AR at p. 80).   Plaintiff also "received payments under the Wounded Warrior Program, Department of Veterans Affairs benefits, and unemployment."   Id.   The ALJ found "these earnings were not the result of substantial gainful activity."   Id.

5

impairment must have lasted at least twelve months or be expected to result in death. See 20 CFR § 404.1509.

The ALJ identified plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine,[3] and tearing and moderate tendinosis[4]/mild acromioclavicular joint arthrosis."[5] (AR at p. 80 (citing 20 CFR § 404.1520(c))).

---

[3]"The phrase 'degenerative changes' in the spine refers to osteoarthritis of the spine. Osteoarthritis is the most common form of arthritis. Doctors may also refer to it as degenerative arthritis or degenerative joint disease. Osteoarthritis in the spine most commonly occurs in the neck and lower back. With age, the soft disks that act as cushions between the spine's vertebrae dry out and shrink. This narrows the space between vertebrae, and bone spurs may develop. Gradually, your spine stiffens and loses flexibility. In some cases, bone spurs on the spine can pinch a nerve root — causing pain, weakness or numbness." April Chang-Miller, M.D., Degenerative changes in the spine: Is this arthritis?, Mayo Clinic (Feb. 25, 2017), http://www.mayoclinic.org/diseases-conditions/osteoarthritis/expert-answers/arthritis/faq-20058457?utm_source=Google&utm_medium=abstract&utm_content=Degenerative-disc-disease&utm_campaign=Knowledge-panel.

[4]"Tendinosis refers to internal tendon degeneration. This occurs because o[f] an imbalance between tendon breakdown and tendon repair. Thus, tendinosis can result either from an increase in breakdown such as from overuse or injury, or from a decrease in the healing response." Rotator Cuff Tendinosis, Seacoast Orthopedics & Sports Medicine (last visited March 1, 2017), http://www.sosmed.org/specialties/shoulder-elbow/rotator-cuff-tendinosis/.

[5]"Osteoarthritis -- also known as degenerative joint disease -- occurs when the cartilage that covers the tops of bones, known as articular cartilage, degenerates or wears down. This causes swelling, pain, and sometimes the development of osteophytes -- bone spurs -- when the ends of the two bones rub together. . . . The shoulder is made up of two joints, the acromioclavicular (AC) joint and the glenohumeral joint. The AC joint is the point where the collarbone, or clavicle, meets the acromion, which is the tip of the shoulder blade. The glenohumeral joint is the point where the top of the arm bone, or humerus, meets the shoulder blade, or scapula. Osteoarthritis is more commonly found in the AC joint." Shoulder Osteoarthritis (Degenerative

The ALJ concluded plaintiff's migraines were not a severe impairment. Id. at pp. 80-82. Plaintiff challenges that finding. (Docket 18 at pp. 3-5).

The ALJ's complete explanation for finding plaintiff's migraines were non-severe is as follows:

> The claimant alleged disability due to headaches, however, the undersigned finds this condition to be nonsevere. In October 2014, neurological examination was unremarkable (Exhibit 16F/74). Additionally, in June 2015, the claimant denied headaches (Exhibit 22F/1). Furthermore, in July 2015, imaging of the brain was unremarkable (Exhibit 20F/l). Moreover, the claimant's cranial nerves were grossly intact (Exhibit 21F/6). The evidence does not significantly limit the claimant's physical or mental ability to do basic work activities. As such, the undersigned finds this condition to be nonsevere.

(AR at p. 81).

Plaintiff argues the medical evidence relating to his migraines sufficiently supports finding they were a severe impairment. (Docket 18 at p. 3). Plaintiff indicates Dr. Jie Liu treated him on multiple occasions from January to December 2013. Id. at pp. 3-4. Dr. Liu recorded plaintiff as having migraines three to four days each week with effects lasting from three hours to the entire day. Id. at p. 3. Plaintiff highlights the treatment he received from Dr. Laurie Weisensee, who also recorded plaintiff's migraines as occurring three to four times per week. Id. at p. 4. Both Dr. Liu and Dr. Weisensee prescribed plaintiff medication for his migraines. Id.

---

Arthritis of the Shoulder), WebMD July 20, 2016), http://www.webmd.com/osteoarthritis/guide/shoulder-osteoarthritis-degenerative-arthritis-shoulder#1.

Plaintiff claims "[t]here are no tests that can prove [a person] has migraines[,]" so the ALJ should not have taken plaintiff's "unremarkable" neurological exam and brain imaging and intact cranial nerves as reasons his migraines were not a severe impairment.  Id. at pp. 4-5.  Plaintiff argues the ALJ erred in noting plaintiff denied headaches when Dr. Jonathan Wilson treated him in June 2015 after plaintiff had back surgery.  Id. at p. 5.  Plaintiff asserts Dr. Wilson recommended a CT scan[6] of plaintiff's head to address dizziness, and plaintiff did not raise the issue of migraines because he had other serious medical concerns to discuss with Dr. Wilson connected to his back surgery.  Id.  Plaintiff contends his own testimony and his wife's statement are consistent with the medical evidence in support of finding his migraines were a severe impairment.  Id.

Defendant argues the court should find the ALJ did not commit error in concluding plaintiff's migraines were not a severe impairment.  (Docket 19 at pp. 4-9).  Defendant asserts the migraines were not severe because plaintiff's medical treatment sufficiently controlled their impact on his functioning.  Id.

---

[6]"A computerized tomography (CT) scan combines a series of X-ray images taken from different angles and uses computer processing to create cross-sectional images, or slices, of the bones, blood vessels and soft tissues inside your body. CT scan images provide more detailed information than plain X-rays do. . . . A CT scan has many uses, but is particularly well-suited to quickly examine people who may have internal injuries from car accidents or other types of trauma.   A CT scan can be used to visualize nearly all parts of the body and is used to diagnose disease or injury as well as to plan medical, surgical or radiation treatment."  Mayo Clinic Staff, CT Scan Definition, Mayo Clinic (Mar. 25, 2015), http://www.mayoclinic.org/tests-procedures/ct-scan/basics/definition/prc-20 014610.

at p. 4.  Defendant claims plaintiff cannot demonstrate error warranting reversal because the ALJ found other severe impairments and plaintiff fails to show the end result would change if the ALJ found additional severe impairments.  Id. at p. 5. (citing Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012)).  Defendant contends the ALJ's decision details sufficient medical evidence underlying her finding on all of plaintiff's non-severe impairments.  Id. at pp. 5-6.  Defendant claims plaintiff failed to meet his burden in showing his migraines were a severe impairment because he relies too much on his own subjective descriptions of symptoms.  Id. at p. 8.

The issue before the court is whether substantial evidence supports the ALJ's determination that plaintiff's migraines were not a severe impairment.  See Kirby, 500 F.3d at 707-08.  As stated above, a severe impairment is one which significantly limits a physical or mental ability to do basic work activities.  20 CFR § 404.1521.

The ALJ's explanation for finding plaintiff's migraines non-severe boils down to plaintiff stating in June 2015 he was not experiencing headaches and three instances of records showing an absence of medical evidence of migraines.  (AR at p. 80).

"Because migraines constitute a subjective complaint, objective evidence conclusively showing whether a person suffers from them is impossible to find."  Carlson v. Astrue, Civil No. 09-2547, 2010 WL 5113808, at *12 (D. Minn. Nov. 8, 2010).  Courts recognize this difficulty and

9

acknowledge "laboratory tests cannot prove the existence of migraine headaches . . . ." Wiltz v. Barnhart, 484 F. Supp. 2d 524, 532 (W.D. La. 2006) (citing Ortega v. Chater, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996)); see Thompson v. Barnhart, 493 F. Supp. 2d 1206, 1215 n.7 (S.D. Ala. 2007) (collecting cases); see also Creel v. Wachovia Corp., No. 08-10961, 2009 WL 179584, at *8 n.20 (11th Cir. Jan. 27, 2009) ("Neither party has identified any objective tests that would automatically establish the existence of neurologically-based migraines, and there appears to be no set standard for establishing the existence of migraines.") (citations omitted). Rather than using laboratory tests looking for direct medical evidence, "doctors diagnose migraines through medical signs and symptoms such as nausea, vomiting, photophobia[7][ and] sensitivity to sound."[8] Carlson, 2010 WL 5113808, at *12 (citing Duncan v. Astrue, No. 4:06-CV-230, 2008 WL 111158, at *6 (E.D.N.C. Jan. 8, 2008); Ortega, 933 F. Supp. at 1075).

At the same time, plaintiff's "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A

---

[7]"Photophobia is eye discomfort in bright light." Photophobia, MedlinePlus, U.S. National Library of Medicine (May 11, 2015), https://medlineplus.gov/ency/article/003041.htm.

[8]This is also referred to as "phonophobia." Zamzil Amin Asha'ari, et al., Phonophobia and Hyperacusis: Practical Points From a Case Report, U.S. National Library of Medicine, National Institutes of Health (2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3216140/. ("Phonophobia is defined as a persistent, abnormal, and unwarranted fear of sound.").

physical . . . impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (citing 20 CFR § 404.1508) (internal quotation marks omitted).

The court finds error in the ALJ's reliance on three instances of records showing an absence of direct medical evidence of migraines. See Stebbins v. Barnhart, No. 03-C-0117-C, 2003 WL 23200371, at *10-11 (W.D. Wisc. Oct. 21, 2003) (finding error and remanding when the ALJ based a decision on "a fundamental misunderstanding of the diagnosis and treatment of migraine headaches"). The ALJ's remaining reason for finding the migraines non-severe, plaintiff's failure to report migraines during a June 2015 examination, does not save the ALJ's error. (AR at p. 81). One example of plaintiff denying experiencing headaches is not enough to overcome his extensive and consistent history with migraine diagnosis and treatment.

The first instance in the record of plaintiff's migraine headaches is his military service physical at Camp Pendleton on January 9, 2013, where he "complained of headaches two to three times a week, pain of 8/10 sometimes, . . . [and] light sensitivity and noise sensitivity lasting two to three hours." (Docket 15 ¶ 19). On January 15, 2013, at Camp Pendleton's Concussion Clinic plaintiff stated experiencing headaches and falling while walking up stairs due to a "fuzzy feeling . . . ." Id. ¶ 21. That same day plaintiff saw neurologist Dr. Jie Liu and explained his headaches occur "three to four days

11

a week . . . last[ing] about three to four hours up to the whole day[, . . . and they] came with photophobia and phonophobia but no nausea or vomiting." Id. ¶ 22.  Dr. Liu diagnosed plaintiff with migraines and prescribed medication to treat the condition.  Id.  Plaintiff visited Dr. Liu on March 1, 2013, again reporting headaches, though they had been less intense.  Id. ¶ 30.  Dr. Liu saw plaintiff on April 2, 2013, when plaintiff claimed experiencing three migraine headaches in the prior month and Dr. Liu concluded the migraines were "not well controlled . . . ."  Id. ¶ 35.

Plaintiff visited Dr. Liu next on May 3, 2013, and indicated he had two migraine headaches "since the last visit and that bright light and noise will trigger them."  Id. ¶ 45.  On June 3, 2013, Dr. Liu examined plaintiff and recorded plaintiff experiencing four migraine headaches during the prior month, but medication helped ease the migraines to an extent.  Id. ¶ 51. Dr. Liu saw plaintiff on July 1, 2013, and determined plaintiff experienced one migraine headache since the last visit and it lasted for two days.  Id. ¶ 58.  Dr. Liu found plaintiff's migraine headaches were stabilized as four or fewer instances each month.  Id.

On July 18, 2013, plaintiff saw a licensed social worker, Genavieve Donnelly, and "reported weekly migraines triggered by light sensitivity and loud sounds."  Id. ¶ 63.  On August 13, 2013, Dr. Liu determined the migraine headaches remained stable.  Id. ¶ 69.  Plaintiff visited Dr. Liu on

December 13, 2013, and Dr. Liu found the migraine headaches were still stable and diagnosed plaintiff with "migraine . . . improving . . . ."  Id. ¶ 76.

Plaintiff saw a different neurologist, Dr. Laurie Weisensee, on October 22, 2014, and "described chronic daily global dull headaches" and more severe headaches "three to four times a week . . . with nausea and photophobia."  Id. ¶ 84.  During this visit plaintiff reported dizziness and balance problems.  Id.  Plaintiff visited Diana Edward for a compensation and pension exam on January 28, 2015.  Id. ¶ 100.  Ms. Edward noted plaintiff "suffered from migraines over the past year[,]" including experiences where the migraine headaches "last 24 hours" and "cause nausea[ and] dizziness . . . ."  Id.

The court is mindful of the portions of the record indicating medication may have alleviated plaintiff's migraines to an extent.  Id. ¶¶ 33, 43, 51, 58, 69 & 70.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (citing Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)) (internal quotation marks omitted).  When "migraine headaches are controllable and amenable to treatment, they 'do not support a finding of disability.' "  Martise, 641 F.3d at 924 (quoting Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009)).  However, in addition to the many medical findings supporting plaintiff's migraines being severe, there are points in the record where the migraines were found "not well controlled . . . ."  (Docket 15 ¶¶ 35,

13

45); see Carlson, 2010 WL 5113808, at *10-11 (finding migraines not controlled when "medication provided only partial and intermittent relief"). Plaintiff's more recent medical examinations in October 2014 and January 2015 reinforce the claim his migraines were severe.   (Docket 15 ¶¶ 84, 100).

The statement from Sandra Carrier, plaintiff's wife, further supports his argument his migraines severely impaired him.   (AR at pp. 324-32).   She explains plaintiff cannot experience loud sounds or bright lights and certain odors trigger his migraines.   Id. at pp. 324, 327, 329 & 331.   Ms. Carrier's statement provides a source beyond plaintiff's own claims to demonstrate the severity of plaintiff's migraine headaches.   See Martise, 641 F.3d at 923 (requiring more than the claimant's subjective statements to show a severe impairment).

The court finds the ALJ erred in determining whether plaintiff's migraines were a severe impairment.   See Stebbins, 2003 WL 23200371, at *10-11.   Considering the evidence that "fairly detracts from [the] decision[,]" the court finds substantial evidence does not support the ALJ's determination.   See Reed, 399 F.3d at 920.   The ALJ's reliance on "unremarkable" neurological exams (AR at p. 81) "was a fundamental misunderstanding of the diagnosis and treatment of migraine headaches." Stebbins, 2003 WL 23200371, at *10; see Thompson, 493 F. Supp. 2d at 1215 n.7 (collecting cases).   Detracting from the ALJ's determination is plaintiff's extensive history of migraine treatment and diagnosis for related

14

symptoms such as phonophobia, photophobia, dizziness and nausea. (Docket 15 ¶¶ 15, 21, 22, 35, 45, 63, 84 & 100). Ms. Carrier's statement on her observations of plaintiff's migraines reinforces the medical history through a source other than the plaintiff. (AR at pp. 324, 327, 329 & 331).

Defendant argues any error in the ALJ's severity determination on plaintiff's migraines does not warrant remand unless plaintiff can demonstrate a different result would have occurred without the error. (Docket 19 at p. 5). "To show an error was not harmless, [plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred." Byes, 687 F.3d at 917 (citations omitted).

The ALJ's error in determining the severity of plaintiff's migraines is not harmless because it impacts areas of the ALJ's decision beyond the step two analysis. Failure to identify all of a claimant's severe impairments impacts not only the ALJ's credibility findings, consideration of activities of daily living, but most importantly, a claimant's residual functional capacity ("RFC").[9] "[F]ailure to consider plaintiff's limitations . . . infect[s] the ALJ's . . . further analysis under step four." Spicer v. Barnhart 64 Fed. Appx. 173, 178 (10th Cir. 2003).

---

[9]See supra Standard of Review at p. 4. Before considering step four of the evaluation process, the ALJ is required to determine a claimant's RFC. 20 CFR § 404.1520(e). RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments. 20 CFR § 404.1545(a)(1). In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe. 20 CFR § 404.1545(e). All of the relevant medical and non-medical evidence in the record must be considered. 20 CFR §§ 404.1520(e) and 404.1545.

The ALJ gave "no weight" to Dr. Liu's opinion "because it is inconsistent with her own and other objective findings."  (AR at p. 89).  Ms. Carrier's statement received "little weight" in the ALJ's analysis because the ALJ found it inconsistent with several medical findings.  Id. at p. 91.  The ALJ determined plaintiff's statements regarding his symptoms were "not entirely credible for the reasons explained in this decision."[10]  Id. at p. 84.  These conclusions of the ALJ refer almost exclusively to plaintiff's back and shoulder impairments—not his migraines.  Id. at pp. 83-91.  With the medical support for plaintiff's migraines outlined above, the weight given to these opinions and statements may be greater if the ALJ incorporated migraines into the analysis.  See supra Step Two at pp. 11-13.  The absence of migraines in the ALJ's analysis on these points is understandable since the ALJ erroneously analyzed the severity of plaintiff's migraines.  See id. at pp. 14-15.  But the absence also provides sufficient "indication that the ALJ would have decided differently if the error had not occurred."  Byes, 687 F.3d at 917.  If the ALJ did not commit the mistakes described above regarding plaintiff's migraines, there is "some indication" the ALJ would have come to a different conclusion in plaintiff's case.  Id.; Carlson, 2010 WL 5113808, at *16-17.

---

[10] The court recognizes the ALJ identified some potentially important inconsistencies in plaintiff's case.  (AR at pp. 86-87).  These include plaintiff receiving unemployment benefits and his various physical activities.  Id.  Although these facts may stand out in plaintiff's case, they do not alter the court's finding regarding the ALJ's error in assessing plaintiff's migraines.

This is further supported by the reasons for granting greater weight to Dr. Liu's opinion on plaintiff's migraines.  Dr. Liu is a neurologist who treated plaintiff, and Dr. Liu's medical conclusions find support in the record. See supra Step Two at pp. 11-13.  "Migraine headaches generally are treated by neurologists, [and a]s such, a neurologist's opinion regarding migraines should be granted greater weight."  Carlson, 2010 WL 5113808, at *15 (citing Stebbins, 2003 WL 23200371, at *13); see Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (finding a treating specialist's opinion is entitled to greater weight than the opinions of nonspecialists where the specialist's opinion is supported by clinical data).

To determine whether plaintiff could perform past relevant work, the ALJ relied on the statement of a vocational expert who "testified that if an individual had the [plaintiff's] residual functional capacity, such an individual could perform the . . . past relevant work as a fast food worker."  (AR at p. 92).  However, "[i]f a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998) (citation omitted); see Carlson, 2010 WL 5113808, at *17 ("Where the ALJ's RFC analysis was in error, as in this case, it cannot be the basis for a proper hypothetical question to a vocational expert.") (citation omitted).

17

The ALJ's error detailed above "seriously undercut[s] the validity of other areas of the ALJ's decision."  Carlson, 2010 WL 5113808, at *17 (ruling on an ALJ's error in evaluating a claimant's migraines).  As a result of concluding "the ALJ's decision is not based on substantial evidence on the whole, '[the court has] no confidence in the reliability of the RFC upon which the ALJ based [her] decision.' "  Id. (quoting Snead v. Barnhart, 360 F.3d 834, 839 (8th Cir. 2004)).

## ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 18) is granted.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with this decision.

Dated March 6, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE